## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01312-DDD-SBP

COREY WILLIAMS,

      Pro Se Plaintiff,

v.

STATE OF COLORADO,
COLORADO CHILD SUPPORT ENFORCEMENT,
MATTHEW RYAN

      Defendants.

---

## DEFENDANTS STATE OF COLORADO AND THE DIVISION OF CHILD SUPPORT SERVICES' MOTION TO DISMISS

---

Defendants State of Colorado and Division of Child Support Services ("State Defendants)[1] by and through Senior Assistant Attorney General Amy Colony and Assistant Attorney General Jennifer Ewa, of the Office of the Colorado Attorney General, move to dismiss Plaintiff's Second Amended Complaint ("Complaint") [Doc. 13] pursuant to Fed. R. Civ. P. 12(b)(1) and (6), for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. In support thereof, Defendants state the following:

---

[1] There is no State Department or Division of the Colorado Department of Human Services known as the "Colorado Child Support Enforcement." Rather, the Division of CDHS responsible for management and oversight of Child Support Enforcement is known as the "Division of Child Support Services (CSS)." To the extent Plaintiff intended to name the county child enforcement office as a Defendant, the undersigned counsel do not represent this public entity and do not purport to respond on its behalf.

## CONFERRAL

DDDCiv. P.S. III(D) 1 and D.C.COLO.LCivR 7.1 do not require conferral for a Rule 12(b) motion.

## BACKGROUND

Plaintiff Corey Williams brings an action against the State of Colorado and the Division of Child Support Services (CSS) ("State Defendants), alleging two Section 42 U.S.C. § 1983 claims under the Due Process and Equal Protection Clauses of the Fourteenth Amendment, arising out of the enforcement of his child support obligations:  Claim One: Due Process Violation – Unconstitutional Driver's License Suspension; and, Claim Two: Reporting Child Support to Credit Bureaus – Unconstitutional. [*See* Doc. 13 at 4-5]. He asserts that the suspension of his driver's license for past due child support and reporting his arrearages to credit bureaus violates his constitutional rights. *Id.*

Plaintiff alleges his driver's license has been suspended for most of his adult life by child support enforcement officials. [*See* Doc. 13 at 4]. He claims that as a result, he has suffered an inability to maintain employment and has limited possibilities for self-employment. *Id.* Williams argues that the "automatic" suspension of driver's licenses for non-payment of child support, as enforced by Defendants, is unconstitutional because "it deprives individuals of their property interest in their driver's licenses without due process of law, violating the Fourteenth Amendment to the United States Constitution." [*See* Doc. 13 at 4]. Further, Williams asserts that the

State of Colorado or Child Support Services, has reported his child support arrearages to the credit bureaus for several years, with adverse personal consequences to Plaintiff. *Id.* He asserts that reporting child support obligations to credit bureaus as civil judgments violates the Fourteenth Amendment's Due Process and Equal Protection Clauses because, as he alleges, this law disproportionately impacts low-income individuals and people of color, and it impairs the ability of non-custodial parents to secure housing, credit, and employment, further hindering their ability to make child support payments. *Id.*

Williams seeks declaratory judgement that suspension of his driver's license due to child support arrearages and reporting child support obligations to credit bureaus as civil judgements, are unconstitutional actions by the State of Colorado. [*See* Doc. 13 at 5]. He further seeks compensatory and "consequential" damages for his financial losses and emotional distress, and an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988. *Id.*

To the extent that Plaintiff seeks monetary relief against the State of Colorado or the Division of Child Support Services, his claims are barred by the Eleventh Amendment. Furthermore, the State, the "Department" or "CSS", are not "persons" under Section 1983. His claims seeking a declaration that state law authorizing the suspension of driving privileges or allowing reporting of child support arrearages to credit bureaus, violates federal law, fail because these laws are presumed constitutional and indeed, have not been deemed unconstitutional. Plaintiff does not cite to any authority suggesting otherwise. Williams fails to allege any facts demonstrating that he was not provided notice and opportunity to be heard in the

Boulder County child support enforcement action, thus his claim for violation of due process fails.[2]  Williams further does not allege any facts to meet the minimum requirements of an Equal Protection claim.

## CHILD SUPPORT ENFORCEMENT IN COLORADO

By way of background, the Colorado Department of Human Services, Division of Child Support Services (CSS) is the state child support enforcement agency. CSS oversees child support enforcement in Colorado and "delegate child support enforcement agencies," also called "CSS Units," are responsible for enforcement practices under the Colorado Child Support Enforcement Act (the Act), sections 26-13-101 through 26-13-129, C.R.S. (2023).  § 26-13-102.5(1), C.R.S.; 9 CCR 2504-1 § 6.002 ("Child Support Services (CSS) Unit").  CSS Units are usually divisions of county departments of human services.  § 26-13-102.5(1), C.R.S.

When an individual fails to pay child support according to the child support order, CSS notifies the obligor of possible suspension through a series of written notices. § 26-13-123(3)(a). At least annually, CSS notified obligors via mail a "written notice of noncompliance" detailing the existence of a child support order, that the obligor has not complied with the order, that the obligor has failed to execute an agreement to pay the owed balance, that the obligor may request an administrative review to object to the notice of noncompliance, the sole grounds upon which that

---

[2] The State Defendants adopt and incorporate by reference, Defendant Matthew Ryan's argument at page 5 of his Motion to Dismiss, that Plaintiff's claims are barred by the *Rooker-Feldman* doctrine. This Court may reject Plaintiff's claims in their entirety on this basis alone.

review can be made, the time in which that administrative review must be conducted, and the process of state administrative review.

If the obligor is unsatisfied with the administrative review conducted by the county CSS office, the obligor has the ability to appeal that decision to CSS within thirty days of that decision at the State level. 9 CCR 2504-1 6.805.2. That decision is also appealable through the judicial review process in state district court, pursuant to section 24-4-106, C.R.S. 9 CCR 2504-1 6.805.2(E), (H).

**Child Support Enforcement: Suspension of Driver's License**

Pursuant to federal law, states are required to withhold or suspend licenses of individuals owing overdue support or failing, after receiving appropriate notice, to comply with subpoenas or warrants relating to paternity or child support proceedings. 42 U.S.C. § 666(a)(16) ("each state must have in effect laws *requiring* the use of the following procedures . . .: Authority to withhold or suspend licenses . . . ." (emphasis added)). Colorado statute § 26-13-123, C.R.S. (2023) represents state compliance with the federal legislation and details the driver's license suspension program used by the CSS to encourage compliance from non-paying obligors with past due child support.

When an individual fails to pay child support according to the child support order, CSS notifies the obligor of possible suspension through a notice. § 26-13-123(3)(a) and (b), as explained above.

The administrative review is initially conducted at the county-level CSS unit.§ 26-13-123(3)(b)(VI)). 9 CCR 2504-1 6.805.1(B). After the time for administrative review by the county enforcement mechanism has expired or the rights to

administrative review has been exhausted, CSS sends an electronic notice called the "Initial Notice of Failure to Comply" to the Department of Revenue. § 26-13-123(4), C.R.S. "Upon receipt of the notice of failure to comply from the state child support enforcement agency, the department of revenue shall suspend the obligor's driver's license pursuant to section 42-2-127.5, C.R.S." § 26-13-123(5)(a).

If an obligor can come into compliance after their license is suspended, the Department of Revenue will reinstate a driver's license upon receipt of a notice of compliance from the CSS that indicates the obligor has complied with the court or administrative order or has agreed upon a payment plan approved by the CSS Unit. § 26-13-123(5)(c). The Department of Revenue may also issue a probationary license that authorizes the obligor to travel to and from their place of employment even if their license is suspended due to child support arrearages. §§ 26-13-123(5)(b), 42-2-127.5(4), C.R.S. (2023).

## Child Support Enforcement: Reporting to Consumer Reporting Agencies (CRAs)

As part of the effort to enforce state court child support orders, states are required by the federal government to establish procedures for periodically reporting the name of any non-custodial parent who is delinquent in the payment of support, to Consumer Reporting Agencies, or "CRAs" , including the amount of overdue support owed by such a parent. 42 U.S.C. § 666(a)(7)(A). Federal law also requires states to provide due process to child support debtors prior to making any such report to a CRA. *Id.* 42 U.S.C. § 666(a)(7)(B). Section 26-13-116, C.R.S. (2023) sets forth

Colorado's procedures for compliance with the federal law. The statute grants CSS the authority to report obligors who meet specific criteria to CRAs.

Pursuant to this state law, and prior to furnishing any information to CRAs, CSS is required to provide advance notice to the obligor regarding the proposed release of the information to the consumer reporting agency. § 26-13-116(3), C.R.S. (2023); 32 U.S.C. § 666(a)(7)(B). That notice must contain an explanation of the obligor's right to contest the accuracy of the information to be released. § 26-13-116(3), C.R.S. (2023); 32 U.S.C. § 666(a)(7)(B).

The State Board of Human Services promulgated rules, pursuant to §§ 24-4-103 and 26-13-116(5), to implement procedures for contesting the accuracy of the information contained in the notice. The rules are in addition to any rights that a person may have to contest a consumer reporting agency report pursuant to state law, §§ 5-18-110 to 5-18-117, C.R.S., § 26-13-116(5), C.R.S. The rules governing the administrative review process are the same as those detailed above for driver's license suspension.

## Standards of Review

*Rule 12(b)(1).* Dismissal under Rule 12(b)(1) is not a judgment on the merits, but instead is a determination that the court lacks authority to adjudicate the matter. *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994). If a court lacks jurisdiction, it "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). Rule 12(b)(1) motions generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter

jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (citation omitted). The former are "determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). In the latter, a court need not presume the truthfulness of the allegations but rather may consider affidavits, hearing testimony, and other materials, *see Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001), and doing so does not convert a motion to dismiss to one for summary judgment. *See Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) (citing *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987)). A plaintiff bears the burden of establishing subject matter jurisdiction. *Basso*, 495 F.2d at 909.

A motion to dismiss based on Eleventh Amendment sovereign immunity, challenges subject matter jurisdiction and is therefore governed by Rule 12(b)(1). *See Meyers v. Colo. Dep't of Human Servs.*, 62 F. App'x 831, 832 (10th Cir. 2003).

***Rule 12(b)(6).*** Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). "The question is whether, if the allegations are true, it is plausible and not merely possible that plaintiff is entitled to relief under the relevant law." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192 (10th Cir. 2009). "While courts must accept well-pleaded factual allegations as true, purely conclusory statements are not entitled to this presumption." *WildEarth Guardians v. Extraction Oil & Gas, Inc.*, 457 F. Supp. 3d 936, 945 (D. Colo. 2020); *see also Martin v. Henderson*, No. 09-CV-02574-

MSK-CBS, 2011 WL 864293, at *3 (D. Colo. Mar. 10, 2011), *aff'd sub nom. Martin v. Hilkey*, 460 F. App'x 760 (10th Cir. 2012) (*Iqbal* and *Twombly* "make clear that it is facts, not conclusions, that must be pled; 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions,' including 'legal conclusion[s] couched as a factual allegation.'" (quoting *Iqbal*, 556 U.S. at 678)). Furthermore, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'n Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994).

## ARGUMENT

### I. Plaintiff's claims for money damages against the State of Colorado and the Division of Child Support Services are barred by the Eleventh Amendment.

The Eleventh Amendment to the United States Constitution bars federal jurisdiction over claims for money damages against a state, its instrumentalities, and state officials acting in their official capacity. *See generally, Tennessee v. Lane*, 541 U.S. 509, 517-19 (2004); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989) (holding that Congress did not abrogate sovereign immunity through § 1983, and that state agencies and employees acting in their official capacity are not "persons" subject to suit under § 1983).

Plaintiff in this case seeks damages against the State Defendants. [Doc. 13, p. 5]. This Court lacks jurisdiction over these claims against the State and the Division of Child Support Services, and therefore, these claims must be dismissed.

Even if the Eleventh Amendment did not bar damages claims against the State or the Division, neither public entity is considered a "person" subject to suit pursuant to §1983. *Hafer v. Melo*, 502 U.S. 21, 26 (1991). 42 U.S.C. § 1983 creates a right of action against "[e]very person who," under color of law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."

Neither a State nor its officials acting in their official capacities[3] are proper § 1983 defendants, because neither "are 'persons' under § 1983." *Will,* 491 U.S. at 66; *see also, Arizonans for Official English v. Arizona*, 520 U.S. 43, 70 (1997) (Section 1983 creates no remedies against the State). Section 1983 applies only to "persons" and, when sued solely for money damages. *See Will*, 491 U.S. at 70-71. In other words, "the State and arms of the State . . . are not subject to suit under § 1983." *Howlett v. Rose*, 496 U.S. 356, 365 (1990).

Here, neither the State of Colorado nor the Division of Child Support Services is a "person" within the meaning of 42 U.S.C. § 1983. *See Neiberger v. Hawkins,* 70 F.Supp.2d 1177, 1187 (D.Colo. 1999) (neither Colorado Department of Human Services, state mental health facility nor any state employee in an official capacity was a "person" subject to patient's Section 1983 claim for monetary relief). Plaintiff's constitutional claims asserted against the State for money damages must be dismissed with prejudice.

---

[3] Plaintiff has identified none as Defendants in his complaint.

## II. Plaintiff has failed to state a claim for denial of due process under the Fourteenth Amendment.

Williams' complaint fails to allege a plausible procedural due process claim against the State Defendants as Colorado's statutory and regulatory scheme for compelling payment of court ordered child support arrearages through driver's license suspension and reporting to credit bureaus, comply with federal law and satisfy constitutional standards. Moreover, he does not allege any facts demonstrating he did not receive notice of an impending suspension or an opportunity to be heard prior to the suspension of his license.

"The fundamental requisite of due process of law is the opportunity to be heard." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "To be constitutionally adequate, due process requires 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *United States v. Colon*, 993 F.Supp. 42, 44 (D.P.R.1998) (*quoting United States v. Giraldo*, 45 F.3d 509, 511 (1st Cir.1995) (*citing Mullane*, 339 U.S. at 306). "Procedural due process in an administrative action simply requires notice and the opportunity to be heard." *See Martel v. City of Newton, Kan.*, 72 F.Supp.2d 1256, 1263 (D.Kan.1999).

"[A] procedural due process analysis addresses two questions. '[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State, the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.' " *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

## A. The underlying child support enforcement statute satisfies constitutional standards.

Section 26-13-123, C.R.S, sets forth the administrative process by which obligors may be heard and provides ample definitions necessary to understand that administrative process. Further, § 26-13-126 delineates the State's authority to deny, suspend, or revoke professional, occupational, and recreational licenses under the Act. The authority to suspend licenses is echoed under § 24-35-116 which authorizes the Department of Revenue to suspend licenses for failure to comply with a child support order. Accordingly, Colorado regulations provides the process by which obligors may exercise their right to administrative review of contested arrears. 9 CCR 2504-1 6.805.2.

Sections 26-13-123(3) and 24-35-116, operate in tandem to put obligors on notice that CSS is authorized to suspend the licenses of those obligors who owe past due child support. Section 26-13-126 and 9 CCR 2504-1 6.805.(1),(2) detail the procedures by which obligors can appeal the decision and request an administrative review as well as the appeals process of the administrative review. The same is true under (26-13-116(3) for reporting arrearages to credit bureaus. Under both provisions and the accompanying regulations, obligors are provided notice and afforded the ability to be heard, and this is all the constitutional requires.

Plaintiff has not and cannot identify any federal legal authority deeming any portion of these state laws to be in violation of the Fourteenth Amendment right to due process.

**B. Williams has not alleged any facts demonstrating that the proceedings conducted in his child support enforcement case were deficient.**

Williams does not allege any facts confirming whether he participated in the administrative process at all prior to the suspension of his license. He provides no record of any administrative hearings, or communication to the State Defendants where he alleges that due process was not afforded to him. He alleges no facts demonstrating that the procedures set forth above, were not followed with respect to the enforcement of his support obligations or the consequences for non-payment. The only fact that Williams offers to allege this due process violation is the conclusory statement that "there is never appropriate notice." [Doc. 13 at 4]. This court need not treat this self-serving statement with the presumption of truth. *Iqbal*, 556 U.S. at 678.

Likewise, Williams also fails to allege any facts demonstrating he was denied notice and opportunity to be heard prior to the reporting of his child support arrearage to the credit bureaus. Just as with his claim directed at driver's license suspension, Williams simply contends that the law imposes an unfair burden on obligors. He does not provide any legal authority establishing that he enjoys a protected liberty or property interest in a high credit score, nor does he allege that he was, in fact, deprived of a high credit score when CSS reported his arrearages to the CRAs. Further, as with the driver's license suspension, he fails to allege any facts that he was not provided notice and opportunity to be heard. Williams simply contends that his credit score has been negatively impacted due to CSS reporting his

child support debts to CRAs and that in turn, has affected his ability to obtain employment, obtain credit, and purchase a home. [Doc. 13 at 4]. Williams makes no statement explaining the events that led to the reporting to the CRA's. He relies only on a conclusory statement that"[r]eporting child support obligations to credit bureaus as civil judgments violate the Fourteenth Amendment's Due Process and Equal Protection Clauses because it disproportionately impacts low-income individuals and people of color, and it impairs the ability of non-custodial parents to secure housing, credit, and employment, further hindering their ability to make child support payments." [Doc. 13 at 4]. His speculation about the community of child support obligors at large that are subject to these provisions, will not satisfy even minimal pleading standards. Without more, his claims must fail.

Notably, Williams has not set forth any legal authority to suggest that recognizes a liberty interest or property interest in any credit score, much less a favorable one, and the Defendants are aware of none.

Williams has not and cannot allege any facts demonstrating that Colorado's procedural mechanism for suspending the driving privileges of child support debtors and/or reporting of child support debts to credit bureaus, is constitutionally deficient. Williams failed to articulate facts establishing that he was not afforded an opportunity to be heard. In conclusion, the Complaint fails to satisfy any element of a procedural due process claim.

### III. Williams' Complaint does not allege facts supporting his claim for violation of his Fourteenth Amendment right to Equal Protection under the law.

Williams alleges that State Defendants, in reporting to the credit bureaus, violated his Fourteenth Amendment rights under the Equal Protection Clause because the underlying statute disproportionately impacts low-income individuals and people of color, and impairs the ability of non-custodial parents to secure housing, credit, and employment. He claims that due to CSS reporting his arrears to CRAs, that he was forced to live in a camper, as this practice affects his ability to get a job, obtain credit, and purchase a home. [Doc. 13 at 4]. He seeks declaratory judgement, pronouncing that reporting child support obligations to credit bureaus as civil judgements as unconstitutional, and money damages.

Equal protection of the law requires the government to treat similarly situated persons in a like manner. *Rodriguez v. Schutt*, 914 P.2d 921 (Colo.1996). To state a claim under the Equal Protection Clause, a plaintiff must plead facts showing that he was treated differently from others who are similarly situated to him, and that the acts forming the basis of the plaintiff's claim were motivated by a discriminatory purpose. *See Marshall v. Columbia Lea Regional Hosp.*, 345 F.3d 1157, 1179 (10th Cir. 2003).

With respect to his demand for declaratory judgment, Williams does not articulate how section 26-13-116 creates two similarly situated groups, nor how those two groups are treated differently. He summarily declares Colorado's law "disproportionally impacts low-income individuals and people of color and it impairs the ability of non-custodial parents to secure housing, credit, and employment

furthering hindering their ability to make child support payments." Williams neither explains how the statute divides obligors into different classes of people nor does he articulate how low-income individuals or people of color are disproportionately impacted or otherwise treated unfavorably.

Moreover, Williams does not specify whether he is challenging the state statute on its face or as applied, nor does he identify a fundamental right that state law has infringed. Because he does not allege that the state law creates suspect classification or violates a fundamental right, the State Defendants need only demonstrate that the challenged laws satisfy the rational basis test. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985).

"When a statute is challenged as violating equal protection because it treats two groups differently, the threshold question is whether those two groups are similarly situated. Unless they are similarly situated, the equal protection guarantee is not implicated." *People v. Castillio*, 510 P.3d 561 *citing Buckley Powder Co. v. State*, 70 P.3d 547, 562 (Colo. App. 2002). "A statute will be presumed constitutional under rational basis review and the party challenging the constitutionality of a law has the burden of proving its unconstitutionality beyond a reasonable doubt." *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *Harris v. The Ark*, 810 P.2d 226 (Colo.1991).

Ultimately, liability for money damages must be predicated in conduct traceable to a defendant's individual actions. *Iqbal*, 556 U.S. at 676. A conclusory assertion of an equal protection violation, unsupported by factual allegations, must be rejected as a matter of law. *Abbott v. McCotter*, 13 F.3d 1439, 1441 (10th Cir. 1994)

(upholding district court's dismissal of plaintiff's equal protection claim supported only by conclusory allegations and no factual allegations). The specific facts alleged by the plaintiff must be "at least susceptible of an inference of discriminatory intent." *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir.1998).

With respect to his claim for monetary damages, Williams' equal protection claim must fail because he only names public entities as Defendants as opposed to describing the conduct of an individual defendant or defendants, as is required by the applicable pleading standards. *See Iqbal.* 556 U.S. at 676. Williams has not and cannot identify a specific public official within the Department of Human Services who has engaged in intentional discriminatory conduct directed at him. Thus, to the extent he is claiming the State Defendants are liable for his alleged damages caused by discrimination in enforcing child support enforcement laws, this claim must be dismissed.

Wiliams does not allege any facts, such as statistics, to support his conclusory declaration that state law violates the guarantee of equal protections of the laws. Nor does Williams allege any facts demonstrating that he, as an individual, has been treated differently than another obligor, let alone that the differential treatment is based on racial animus or economic standing. CSS employs a uniform procedure by which obligors meeting certain criteria with respect to outstanding child support debts, will have those arrearages reported to CRAs. To the extent Williams intends to assert a deprivation of his right to equal protection under the law, by virtue of racial discrimination, Williams does not allege that he belongs to a protected racial class, let alone that the state laws at issue have a disparate impact on certain racial groups.

Williams has not and cannot allege that there is a different procedure that is applied to obligors of a different race or economic class – or that the scheme that exists is more favorably applied to one group of obligors over another. Rather, the pronouncements in his Complaint are based on nothing more than speculation and his dissatisfaction with the way those state laws have impacted him personally as an obligor. This will not support a plausible Equal Protection challenge.

Child support agencies have a variety of options to enforce child support orders when non-custodial parents do not pay what they owe, and as Williams readily acknowledges in his Complaint, enforcement actions are successful because they encourage parents to "make their required payments shortly after enforcement." [Doc. 13 at 5]. This is the precise intent of federal and state laws directed at compelling payment of court ordered child support and it is not unlawful. Williams' only complaint here is that the law is working too well. The state seeks to encourage payment to support children; it is intended to encourage parental responsibility so that children receive financial, emotional, and medical support from both parents, even when they live in separate households. Colorado has an ongoing commitment to serving parents and guardians to make sure that Colorado kids get the financial support that they need to thrive.[4] Section 26-13-116, C.R.S. (2023) is rationally related to a legitimate state interest.

_____

[4] Office of Child Support Enforcement. The Story Behind the Numbers. December 2016. https://www.acf.hhs.gov/sites/default/files/documents/ocse/sbtn_csp_is_a_good_investment.pdf. Last visited January 30, 2024, 5:02pm.

The collection of child support is undoubtedly an important state interest, and the statute provides procedures to increase the effectiveness of the child support enforcement program. Credit reporting is a compliance tool that is designed to motivate non-custodial parents to comply with child support by creating disincentives to noncompliance.[5] The State only reports if an obligor is delinquent in the payment of support.

Williams' claims for both monetary damages and declaratory relief based on the argument that state law violates the Equal Protection Clause or was applied to him in a manner that violated his rights under this clause, must be dismissed.

## CONCLUSION

For these reasons, the claims against the State Defendants should be dismissed.

WHEREFORE, the State Defendants respectfully request that the Court dismiss all claims against them.

DATED this 30th day of January 2024.

---

[5] Rebekah Selekman, Amy Johnson. An Examination of the Use and Effectiveness of Child Support Enforcement Tools in Six States. Aug. 2019 https://aspe.hhs.gov/sites/default/files/private/pdf/262936/Child_Support_Enforcement_Tool_Issue_Brief.pdf#:~:text=As%20of%202017%2C%20the%20child%20support%20program%20was,noncustodial%20parents%20do%20not%20make%20child%20support%20payments. Last Visited January 22, 2024, 12:10pm.

PHILIP J. WEISER
Attorney General

*/s/ Amy Colony*
AMY COLONY, No. 36124*
Senior Assistant Attorney General
JENNIFER-GRACE EWA, No. 49798 *
Assistant Attorney General
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 6th Floor
Denver, CO 80203
(720) 508-6000
Amy.Colony@coag.gov

**Attorneys for State Defendants*

# CERTIFICATE OF SERVICE

I certify that I served the foregoing **Defendants State of Colorado's and Colorado Division of Child Support Services' Motion to Dismiss** upon all parties herein by filing copies of same using the ECF System and/or U.S. Mail at Denver, Colorado, this 31st day of January 2024 addressed as follows:

*Pro Se Plaintiff*

Corey Williams
2535 Road 218
Cheyenne, WY 80029
Phone: (331) 452-8385
Email: wydp07@gmail.com

*/s/ La'Tasha Canty*