IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-01312-DDD-SBP

COREY WILLIAMS,

        Plaintiff,

v.

STATE OF COLORADO,
COLORADO CHILD SUPPORT ENFORCEMENT, and
MATTHEW RYAN

        Defendants.

---

**RECOMMENDATION AND ORDER OF UNITED STATES MAGISTRATE JUDGE**

---

**Susan Prose, United States Magistrate Judge**

Pro se plaintiff Corey Williams brings this action under 42 U.S.C. § 1983 against the State of Colorado, Colorado Child Support Enforcement[1] (collectively, "State Defendants"), and Matthew Ryan. This case is before the court after Mr. Williams filed his Second Amended Complaint (ECF No. 13 (hereinafter, "Second Amended Complaint")), and the defendants moved for dismissal. ECF. No. 29 (hereinafter, "Ryan's Motion to Dismiss"); ECF No. 40 (hereinafter, "State Defendants' Motion to Dismiss"). Additionally, Mr. Williams has filed a motion requesting an in-person hearing on these motions. ECF No. 47 (hereinafter, "Motion for Hearing").

---

[1] As pointed out by defendants—and discussed further below—there is no agency in Colorado bearing the name "Colorado Child Support Enforcement." ECF No. 40 at n.1.

1

The court has carefully considered the briefing on the Motions and the applicable law and concludes that oral argument will not materially assist in the resolution of this matter. For the reasons that follow, the court respectfully **RECOMMENDS** that the Motions to Dismiss be **granted**. The court **DENIES** the Motion for Hearing.

## I. FACTUAL BACKGROUND[2]

Mr. Williams's Second Amended Complaint contains few truly factual allegations, and the timing of the events he describes is unclear. Still, accepting his allegations as true, the facts are as follows:

Mr. Williams was ordered by a Colorado state court to pay child support. Second Am. Compl. at 8. Eventually, he fell behind on the scheduled payments and owed at least $12,000. *Id.* Due to his non-payment, Colorado Child Support Enforcement reported the unpaid sum to credit bureaus and sent Mr. Williams a notice that his driver's license would be suspended unless he made a specified payment by the date set in the notice. *Id.* at 4-5.

Ryan is an employee of Colorado Child Support Enforcement and worked on Mr. Williams's case. *Id.* at 5. After receiving the notice about his license, Mr. Williams contacted Ryan to discuss his situation and offered to pay $12,000 "via a tax offset" to prevent his license from being suspended.[3] *Id.* at 5, 7-8. Mr. Williams insists that he made this payment before the

---

[2] On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept the plaintiff's well-pleaded facts as true and draw all reasonable inferences from those facts in the plaintiff's favor. *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).

[3] It is unclear whether Ryan agreed to this proposal. *Compare* Second Am. Compl. at 5 ("Ryan denied the plaintiff's option for forgiveness of past support . . . ."), *with id.* at 8 ("I then planned for a $12,000 payment via tax offset to be made under an agreement with Matthew Ryan . . . .").

2

deadline. *Id.* at 5. Despite this, his license was suspended soon after.[4] According to Mr. Williams, the loss of his license has caused him to lose two jobs and placed him under financial strain. *Id.* at 8.

## II. PROCEDURAL HISTORY

Mr. Williams brought this action on May 24, 2023, and filed an amended complaint on June 28, 2023. ECF Nos. 1, 9. Shortly thereafter, the court granted Mr. Williams leave to proceed in forma pauperis. ECF No. 10. On August 4, 2023, the court ordered Mr. Williams to replead because his amended complaint failed to comply with Rule 8 of the Federal Rules of Civil Procedure. ECF No. 12. Mr. Williams filed his Second Amended Complaint on September 7, 2023.

### A.     Second Amended Complaint

Mr. Williams brings two claims against the State Defendants and one against Ryan. First, he alleges that Colorado's statute authorizing the suspension of an individual's driver's license for failure to pay child support violates the Fourteenth Amendment's Due Process Clause.

Similarly, Mr. Williams alleges that the statute authorizing state agencies to report unpaid child support to credit bureaus violates the Due Process Clause and the Fourteenth Amendment's Equal Protection Clause. He reasons that this reporting "disproportionately impacts low-income individuals and people of color" and "impairs the ability of non-custodial parents to secure housing, credit, and employment, further hindering their ability to make child support payments." Second Am. Compl. at 4.

---

[4] Mr. Williams claims that his license has been suspended for "most of his adult life," but it is unclear whether his license has been suspended multiple times or just once. Second Am. Compl. at 4.

Finally, Mr. Williams sues Ryan for "intentionally and willfully abus[ing] his authority under color of law by allowing Plaintiff's driver's license to be suspended despite having knowledge of the required payment being made on time." *Id.* at 5.

For relief, Mr. Williams asks the court to strike down the statutes described above and award him damages and reasonable attorney's fees. *Id.*

### B.     Pending motions

The Defendants seek dismissal under both Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The State Defendants argue that the court lacks subject-matter jurisdiction over the claims against them because they are entitled to immunity under the Eleventh Amendment. State Defendants' Motion to Dismiss at 9-10. Ryan argues that the court also lacks subject-matter jurisdiction for the claim against him; however, he invokes the *Rooker-Feldman* doctrine. Ryan's Motion to Dismiss at 5-6.

Both Motions also argue that the Second Amended Complaint fails to state a claim upon which relief may be granted. *See* State Defendants' Motion to Dismiss at 11-19; Ryan's Motion to Dismiss at 6-7. Additionally, Ryan asserts that he is entitled to qualified immunity. Ryan's Motion to Dismiss at 7-8.

### III. LEGAL STANDARDS

### A.     Rule 12(b)(1)

Federal courts are courts of limited jurisdiction. Under Article III of the United States Constitution, federal courts only have jurisdiction to hear certain "cases" and "controversies," *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014), rendering them "duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter

4

jurisdiction." *The Wilderness Soc. v. Kane Cnty.*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring). Indeed, courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party. *1mage Software, Inc. v. Reynolds & Reynolds, Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006)).

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may bring either a facial or factual attack on subject-matter jurisdiction, and a court must dismiss a complaint if it lacks subject-matter jurisdiction. *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015). For a facial attack, the court takes the allegations in the complaint as true; for a factual attack, the court may not presume the truthfulness of the complaint's factual allegations and may consider affidavits or other documents to resolve jurisdictional facts. *Rural Water Dist. No. 2 v. City of Glenpool*, 698 F.3d 1270, 1272 n.1 (10th Cir. 2012) (citing *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)).

B.     Rule 12(b)(6)

Under Rule 12(b)(6), defendants can move to dismiss for "failure to state a claim upon which relief can be granted." In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (internal quotation marks omitted). Nevertheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citation and internal quotation marks omitted). That is, the complaint must include well-pleaded facts that, taken as true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The *Twombly/Iqbal* pleading standard first requires the court to identify which allegations "are not entitled to the assumption of truth" because, for example, they state legal conclusions or merely recite the elements of a claim. *Id.* at 679. It next requires the court to assume the truth of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* In this analysis, courts "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. But "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1276 (10th Cir. 2023) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted)), *reh'g en banc denied*, 83 F.4th 1251 (10th Cir. 2023).

### C. Qualified Immunity

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (internal quotation marks omitted). "The record must clearly demonstrate the plaintiff has satisfied [this] heavy two-part burden; otherwise, the defendants are entitled to qualified immunity." *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 877-78 (10th Cir. 2014) (quoting *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (internal quotation marks omitted)). The court has "discretion to decide the order in which to engage the two prongs of the qualified immunity standard." *Andersen v. DelCore*, 79 F.4th 1153, 1163 (10th Cir. 2023) (cleaned up). If the court determines that the plaintiff has not met his burden as to either part of the inquiry, the court "must grant qualified immunity to the defendant." *Id.*

An official's conduct violates clearly established law when, at the time of the challenged conduct, "the contours of a right are sufficiently clear that *every reasonable official* would have understood that what he is doing violates that right." *al-Kidd*, 563 U.S. at 741 (cleaned up) (emphasis added). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). For the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision "on point," or the "weight of authority from other courts must have found the law to be as the plaintiff maintains." *Halley v. Huckaby*, 902 F.3d 1136, 1149 (10th Cir. 2018) (citation and internal quotation marks omitted).

7

      **D.**      **Pro Se Litigants**

Courts must construe pro se filings liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). But the court cannot act as a plaintiff's advocate, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), and must still apply the same procedural rules and substantive law to a pro se litigant as to a represented party. *See Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.3 (10th Cir. 2002); *see also Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008) ("*Pro se* status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure.") (citation and internal quotation marks omitted).

Thus, while the court makes "some allowances" for a pro se plaintiff's "failure to cite proper legal authority, confusion of various legal theories, poor syntax and sentence construction, or unfamiliarity with the pleading requirements," the court "cannot take on the responsibility of serving as [his or her] attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (cleaned up) (quoting *Hall*, 935 F.2d at 1110) (internal quotation marks omitted)); *see also Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (cautioning that the court may not "construct arguments or theories for the [pro se] plaintiff in the absence of any discussion of those issues") (citation omitted).

## IV. ANALYSIS

Because a court may not act without jurisdiction, the court begins with the jurisdictional arguments under Rule 12(b)(1). *See Colorado Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 553-55 (10th Cir. 2016).

      **A.**      **The court lacks subject-matter jurisdiction for the claims against the State Defendants, but *Rooker-Feldman* does not preclude jurisdiction over the claim against Ryan.**

The State Defendants argue that the court lacks jurisdiction for the claims against them because they are entitled to immunity under the Eleventh Amendment. Ryan argues that the *Rooker-Feldman* doctrine deprives the court of jurisdiction for the claim against him. The court will take each argument in turn.

      *1.*      *Eleventh Amendment Immunity*

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The immunity provided by the Amendment "is more than immunity from liability—it actually deprives federal courts of subject-matter jurisdiction[,]" *Wood v. Milyard*, 414 F. App'x 103, 105 (10th Cir. 2011), and these protections extend to entities deemed "arm[s] of the state." *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007) (citing *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 280 (1977)).

Thus, absent waiver or abrogation by Congress, the Eleventh Amendment bars any action brought against a state in federal court—including suits initiated by a state's own citizens—regardless of the relief sought. *Steadfast Ins. Co.*, 507 F.3d at 1252 (citing *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 765-66 (2002)); *see also Griess v. Colorado*, 841 F.2d 1042, 1044-45 (10th Cir. 1988) (recognizing that Colorado has not statutorily waived its Eleventh Amendment immunity); *Quern v. Jordan*,

9

440 U.S. 332, 345 (1979) (Congress did not abrogate state sovereign immunity through its promulgation of 42 U.S.C. § 1983).

At the outset, it is clear that the State of Colorado is immune from suit under the Eleventh Amendment, and therefore, all claims against it must be dismissed for lack of subject-matter jurisdiction. As for Colorado Child Support Enforcement, it is necessary to return to the issues of who/what "Colorado Child Support Enforcement" is and what Mr. Williams's intentions were when he brought this suit.

In Colorado, child support obligations are enforced at both the state and county levels. The Department of Human Services, Division of Child Support Services, is a state agency responsible for the overall enforcement of child support. One aspect of this is to oversee "delegate child support enforcement units," which also enforce aspects of Colorado's child support laws; however, these units are considered part of a county's human or social services department. COLO. REV. STAT. § 26-13-102.5.

Based on the State Defendants' Motion to Dismiss, when Mr. Williams brought suit against Colorado Child Support Enforcement, he sued the Department of Human Services, Division of Child Support Services, which is an arm of the state, and thus immune from suit. Yet, even if Mr. Williams made a mistake and intended to bring suit against the delegate child support enforcement unit[5]—i.e., the county department responsible for enforcing his particular support case—his claims would still be barred by the Eleventh Amendment because "[c]ourts in this District have consistently held that county departments of human services constitute 'arms of the

---

[5] Perhaps because the complex structure of child support enforcement may have—quite reasonably—been lost on him.

state' for purposes of Eleventh Amendment immunity." *Est. of Goodwin by & through Alvarado v. Connell*, 376 F. Supp. 3d 1133, 1145 (D. Colo. 2019) (cleaned up).

Because the State Defendants are immune from suit under the Eleventh Amendment, the court should dismiss these claims against them without prejudice.[6] *Brown v. Buhman*, 822 F.3d 1151, 1179 (10th Cir. 2016) (dismissal for lack of subject matter jurisdiction must be without prejudice).

### 2. Rooker-Feldman *Doctrine*[7]

"The *Rooker-Feldman* doctrine is derived from 28 U.S.C. § 1257(a), and it 'provides that only the Supreme Court has jurisdiction to hear appeals from final state court judgments.'" *Suasnavas v. Stover*, 196 F. App'x 647, 652 n.3 (10th Cir. 2006) (quoting *Bear v. Patton*, 451 F.3d 639, 641 (10th Cir. 2006)). As described by the Supreme Court, this is a "narrow" doctrine, *Lance v. Dennis*, 546 U.S. 459, 464 (2006) (per curiam), that applies only to cases or claims "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

---

[6] The fact that Mr. Williams seeks non-monetary relief from the State Defendants is immaterial because—even putting aside the Eleventh Amendment—states and their agencies are not "persons" for purposes of § 1983. *Steadfast Ins. Co.*, 507 F.3d at 1252; *see also Wood*, 414 F. App'x at 105 (stating that § 1983 "does not abrogate a state's sovereign immunity—indeed, states are not even 'persons' within the meaning of § 1983") (citation omitted).

[7] The doctrine takes its name from two Supreme Court decisions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Ct. App. v. Feldman*, 460 U.S. 462 (1983).

The doctrine thus "precludes a losing party in state court who complains of injury caused by the state-court judgment from bringing a case seeking review and rejection of that judgment in federal court." *In re Miller*, 666 F.3d 1255, 1261 (10th Cir. 2012). Additionally, the doctrine may reach claims so "inextricably intertwined" with a state court judgment that granting relief would necessarily call into question the underlying judgment; however, the Tenth Circuit has emphasized that this is the case only in limited circumstances. *See Kiowa Indian Tribe of Okla. v. Hoover*, 150 F.3d 1163, 1169 (10th Cir. 1998). That all being said, when the doctrine does apply, it deprives a court of subject-matter jurisdiction. *See, e.g.*, *Guttman v. Khalsa*, 446 F.3d 1027, 1031 (10th Cir. 2006).

Nothing in Mr. Williams's Second Amended Complaint appears to contest the underlying state court order/judgment requiring him to pay child support—meaning his claims do not fall within the heartland of *Rooker-Feldman*. Instead, he takes issue with Colorado's laws punishing individuals who have fallen behind on their support payments. While his claims certainly relate to the child support order against him, it is overreaching to say that they are inextricably intertwined such that this court cannot rule on his claims without disturbing the underlying order. *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 517 (10th Cir. 2023) ("[T]his court has specifically held that *Rooker-Feldman* does not apply to 'separate and distinct claim[s] challenging the post-judgment enforcement procedures ordered by the state courts.'") (quoting *Hoover*, 150 F.3d at 1171).

Accordingly, the undersigned concludes that the court has subject-matter jurisdiction over the claim against Ryan in his personal capacity.

### B. Mr. Williams cannot plead a viable due process claim.

Mr. Williams brings suit under § 1983, which requires he demonstrate that he suffered the deprivation of a right secured by the Constitution or laws of the United States and that this deprivation occurred under the color of state law. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150 (1970). Here, he alleges that Ryan denied him due process guaranteed by the Fourteenth Amendment. And because Ryan has asserted the defense of qualified immunity, even if Mr. Williams can show that Ryan violated his constitutional rights, he must then demonstrate that his rights were clearly established when the violation occurred.

The Fourteenth Amendment's Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. As interpreted by the Supreme Court, this provision offers two constitutional protections: procedural due process and substantive due process. *See, e.g.*, *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998). "Procedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision." *Onyx Props. LLC v. Bd. of Cnty. Comm'rs*, 838 F.3d 1039, 1043 (10th Cir. 2016) (citation and internal quotation marks omitted). The court will take each one in turn.

#### 1. Colorado law provides sufficient procedural safeguards.

The Due Process Clause is designed to protect against arbitrary government action. *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). Toward this end, the law requires procedural protections whenever a State deprives a person of life, liberty, or property, the "essence" of this

being "*some* kind of notice and . . . *some* kind of hearing." *Moore v. Bd. of Cnty. Comm'rs of Cnty. of Leavenworth*, 507 F.3d 1257, 1259 (10th Cir. 2007) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original and internal quotation marks omitted)). Ordinarily, the government provides notice and an opportunity to be heard before the deprivation occurs; however, in some cases, a state's post-deprivation remedies supply all the process that is due. *See Hudson v. Palmer*, 468 U.S. 517, 533-34 (1984).

The Tenth Circuit has set out a two-step inquiry for determining whether an individual's procedural due process rights have been violated. First, a court must assess whether "the individual possess[ed] a protected property interest to which due process protection was applicable?" *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006). This is undoubtedly the case here because it is well-settled that individuals possess a property interest in maintaining their driver's license. *See, e.g.*, *Bell v. Burson*, 402 U.S. 535, 539 (1971).

Next, a court must ask: "Was the individual afforded an appropriate level of process?" *Camuglia*, 448 F.3d at 1219 (citation and internal quotation marks omitted). The process that is appropriate—and therefore due—depends upon (1) the nature of the private interest at stake; (2) the risk of erroneous deprivation given the procedures already guaranteed, and whether additional procedural safeguards would prove valuable; and (3) the government's interest, and the burdens that additional procedures might impose. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Here, the court finds that Colorado law provides constitutionally adequate process before it suspends an individual's driver's license for failure to pay child support. State law requires the state child support enforcement agency to issue a written notice of noncompliance to individuals

with outstanding child support payments. COLO. REV. STAT. § 26-13-123(3)(a). This notice must contain the following information: (1) notice that the individual is subject to a support order and that they are not in compliance with that order for failure to pay; (2) notice that the individual may seek administrative review by submitting in writing a request for such review within 30 days of the notice going out; (3) notice that failure to timely request review will result in the state agency submitting a notice of failure to comply to the department of revenue; and (4) notice that the sole grounds for review shall be to assess the individual's identity, amount of outstanding support owed, and compliance with making support payments. *Id.* § 26-13-123(3)(b).

If an individual makes a timely request, the first round of review takes place before a delegate child support enforcement unit. *Id.* § 26-13-123(c). After the unit's review is complete, an individual may petition for review with the state child support enforcement agency. *Id.* § 26-13-123(3)(c)(II). And once the state agency has rendered its decision, an individual may then seek judicial review of the agency's determination. *Id.* § 26-13-123(3)(c)(IV). Notably, throughout this review process, an individual's driver's license is not suspended for failure to pay child support. *See id.* § 26-13-123(4). And even if an individual's license is eventually suspended, an individual may petition the Department of Revenue for a probationary license. *Id.* § 42-2-127.5.

Mr. Williams admits that he received a notice from the state child support enforcement agency notifying him of his unpaid child support. In his Response to Ryan's Motion to Dismiss, Mr. Williams implicitly concedes that this notice contained the information required by state law and informed him of the opportunity for review. ECF No. 46 at 9-10. Still, Mr. Williams says that

15

the process Colorado law affords is unreasonable; however, he did not avail himself of any of the opportunities to be heard before his license was suspended.

Given the ample opportunities for review that were available to him, Mr. Williams cannot plausibly allege that he was denied procedural due process.

### 2.     *Mr. Williams has not alleged a substantive due process violation.*

Because the court must construe the Second Amended Complaint liberally, the court also addresses whether the facts alleged could support a substantive due process claim. There is a high bar to trigger the substantive protections of the Due Process Clause. *See Lewis*, 523 U.S. at 846 ("[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense[.]") (quoting *Collins v. Harker Heights*, 503 U.S. 115, 129 (1992) (internal quotation marks omitted)). To be actionable, a defendant's actions must "shock[] the conscience" and violate the "decencies of civilized conduct." *Rochin v. California*, 342 U.S. 165, 172-73 (1952). To get a sense of how high this standard is, the Tenth Circuit has held that a state employee's unprovoked assault did not rise to the level of a substantive due process violation. *See Williams v. Berney*, 519 F.3d 1216, 1225-26 (10th Cir. 2008); *see also Laidley v. City & Cnty. of Denver*, 477 F. App'x 522, 525 (10th Cir. 2012) ("Even clear violations of state law do not automatically or necessarily rise to the level of substantive due process violations.").

In this case, even accepting Mr. Williams's allegations as true, nothing he alleges suggests that Ryan's conduct was so extreme and arbitrary that it "shocks the conscience." Thus, Mr. Williams has not demonstrated that Ryan violated his constitutional rights. On this ground alone, Ryan is entitled to qualified immunity and dismissal of the claim against him.

### 3. Mr. Williams has not shown that every reasonable officer would have understood that Ryan's actions were unconstitutional.

In light of the conclusion that Mr. Williams has failed to overcome the presumption of qualified immunity as to the first prong, the court need not reach the clearly-established prong. *Est. of Taylor v. Salt Lake City*, 16 F.4th 744, 758 (10th Cir. 2021). However, having found no violation of a constitutional or statutory right in the first instance, it necessarily follows that Mr. Williams has failed to show a violation of a clearly established right. Even more, Mr. Williams has not pointed to—nor has this court found—Supreme Court or Tenth Circuit precedent that established a constitutional or statutory right in a "sufficiently clear" manner such that "*every reasonable official*" in Ryan's position would have known that his alleged conduct violated Mr. Williams's rights. *al-Kidd*, 563 U.S. at 741 (emphasis added).

So even if Ryan did violate Mr. Williams's rights, those rights were not clearly established, and Ryan is entitled to qualified immunity for this additional reason. Accordingly, the claim against Ryan should be dismissed with prejudice. *See, e.g.*, *Clark v. Wilson*, 625 F.3d 686, 692 (10th Cir. 2010 (instructing district court to dismiss based on qualified immunity "with prejudice").

### C. Further leave to amend would be futile.

In cases involving pro se litigants, the Tenth Circuit has found that courts should dismiss with leave to amend when there is a possibility the litigant can correct the defect in the pleading. *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). Dismissal without prejudice is preferable where the deficiencies are "likely the result of an untutored pro se litigant's ignorance of special pleading requirements[.]" *Id.* It is notable, however, that pro se litigants "are not insulated from the rule that dismissal with prejudice is proper for failure to state a claim[.]"

17

*Fleming v. Coulter*, 573 F. App'x 765, 769 (10th Cir. 2014). This is especially true when the litigant cannot succeed on the facts alleged. *Id.*

Simply put, Mr. Williams's claims fail because they cannot be brought in federal court, fail to state a claim upon which relief may be granted, or are barred by qualified immunity. No set of new allegations would alter these conclusions. The results will be the same even if Mr. Williams brings his claims against different defendants. As already discussed, if he brings suit against the delegate child support enforcement units, these units are arms of the state, meaning the insurmountable hurdle posed by the Eleventh Amendment would present itself yet again.

Moreover, while Mr. Williams could pursue injunctive relief through a claim under *Ex parte Young*, 209 U.S. 123 (1908), these hypothetical claims would still fail to withstand scrutiny under Rule 12(b)(6). Any due process challenge would fall short for the same reasons already discussed. Second, courts have rejected equal protection claims similar to Mr. Williams's. *E.g.*, *Thompson v. Ellenbecker*, 935 F. Supp. 1037, 1041 (D.S.D. 1995); *accord Wright v. Family Support Div. of Mo. Dep't of Soc. Servs.*, 458 F. Supp. 3d 1098, 1110 (E.D. Mo. 2020). Accordingly, the undersigned submits that granting Mr. Williams leave to amend would be futile.

## V. CONCLUSION

For the reasons above, the court respectfully **RECOMMENDS** as follows:

(1) That the State Defendants' Motion to Dismiss, ECF No. 40, be **granted** and that all claims against the State Defendants be **dismissed without prejudice** for lack of subject-matter jurisdiction;

(2) That Ryan's Motion to Dismiss, ECF No. 29, be **granted** and that the claim against him be **dismissed with prejudice** because it is barred by qualified immunity; and

(3) That Mr. Williams be **denied** leave to amend and that final judgment be entered in this matter.

Finally, this court **ORDERS** that Mr. Williams' Motion for Hearing, ECF No. 47, is **denied**.[8]

DATED: 9 September, 2024
BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

---

[8] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 783 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").